**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

CHESTER JEMISON,        *
                               *
     Plaintiff,         *
                               *
vs.                   * Civil Action No: 2:13-00308-B
                               *
CAROLYN W. COLVIN,     *
Commissioner of        *
Social Security,       *
                               *
     Defendant.        *

<u>**ORDER**</u>

Plaintiff Chester Jemison (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* On April 10, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.  Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits income on September 8, 2009. (Doc. 15 at 1; Tr. 105-08).  Plaintiff alleges that he has been disabled since June 19, 2009, due to his back injury, carpal tunnel syndrome, feet problems, arthritis in his knees, and high cholesterol. (Tr. 144).  Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Jerome L. Mumford (hereinafter "ALJ") on May 9, 2011.  The hearing was attended by Plaintiff, his attorney, and a vocational expert (hereinafter "VE").  (Id., at 34).  On June 20, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id., at 13-26).  The Appeals Council denied Plaintiff's request for review on January 25, 2013.  (Id., at 1-3).  Thus, the ALJ's decision dated June 20, 2011, became the final decision of the Commissioner.  The parties waived oral argument (Docs. 22, 23), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

A. **Whether the ALJ erred in assigning controlling weight to the opinion of a physical therapist, which is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513.**

**B. Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician and the consultative examiner.**

## III. Factual Background

Plaintiff was born on March 9, 1968, and was 44 years of age at the time of his administrative hearing on August 30, 2012. (Tr. 63). Plaintiff testified at the hearing that he has a high school diploma and last worked as a manager for a commercial roofing company in June 2011. According to Plaintiff, he performed roofing and waterproofing duties until June 20, 2011 when he fell 20-30 feet through a roof, hit a metal bar on the way down, and was rendered unconscious. (Id., at 64-66, 341). As a result of this fall, Plaintiff sustained multiple injuries, including injury to his pelvic, cervical and thoracic spine, liver, spleen, ribs, and scalp. (Id., at 198). Plaintiff underwent medical and surgical procedures including an IR arteriogram, scalp laceration closure, fiber optic bronchoscopy, pelvic fixation, and CT scans. Plaintiff was hospitalized for 10 days, and then was discharged in a wheelchair to an inpatient rehabilitation center for an additional 13 days. At the time of his release, Plaintiff had progressed from a wheelchair to a walker. (Id., at 69-70).

Plaintiff testified that he uses a cane to walk and can possibly walk about one-third (1/3) of a football field without his cane, and that he walks "extremely" carefully because his

surgeon informed him that if he falls, his screws will rip out and because his pelvic plate cannot be repaired again, he would be rendered permanently unable to walk. (Id., at 69, 76).

Plaintiff contends that he is unable to work based on a combination of all of the injuries he sustained from the fall and his ongoing pain. (Id., at 67-68). According to Plaintiff, he cannot perform household chores, such as sweeping and mopping, and is unable to lift a gallon of milk without pain. Plaintiff testified that he is able to fold laundry. (Id., at 72-73).

In his decision, the ALJ made the following relevant findings:

> **The claimant has the following severe impairments: history of multiple fall trauma including status post fracture of pelvic ring with open reduction internal fixation of pubic synthesis (pelvic ring); fracture of sacro iliac joint with closed fixation; C-2 vertebral fracture; fracture of T2 vertebral end-plate; obesity ("5/9 at 289 lbs[.]"); and situational depression (20 CFR 404.1520(c)).[1]**
>
> The above about severe combination of impairments has been determined by medically acceptable evidence, including signs, symptoms, and laboratory findings… [T]he undersigned finds this medically determinable combination of constitutes more than a slight abnormality, and could reasonably be

_____

[1] The ALJ also determined that Plaintiff has not engaged in substantial gainful activity since June 11, 2011, and that he does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., at 12, 13).

expected to have caused more than minimal effect on claimant's ability to perform basic work related activities for a continuous period of 12 or more months.

…

(Id., at 12).

The ALJ summarized Plaintiff's medical records as follows:

The medical record of evidence indicated that the claimant presented to the emergency room June 20, 2011, subsequent to a 20 feet fall through a window on a roof. The claimant sustained pelvic fractures, left iliac vein injury, T2 superior endplate fracture, C2 fracture, liver and splenic lacerations, multiple rib fractures, left pulmonary contusion, and left L4 through L5 transverse process fractures. The claimant underwent open reduction internal fixation to repair the pelvic fractures and left sacro-iliac joint. In order to facilitate healing, the claimant was to remain non-weight bearing for three months. Additionally, the claimant was noted to be hypertensive and placed on blood pressure medication with better control… The claimant was discharged to inpatient rehabilitation until he progressed sufficiently to be released to Home health care and physical therapy…. In September 2011, the claimant admitted to some weight bearing before being released to do [so]. Radiographic imaging noted that screws had loosened as a result of his non-compliance with no weight bearing. Additionally, claimant was charted as taking too many narcotics and not as prescribed…

In November 2011, the claimant was noted as making very slow progress due in part to his obesity despite counseling as to the need to lose weight. The claimant was noted to have gained 7 pounds with a weight of 277 pounds. Upon examination, however, the claimant could rise from a chair with difficulty using a cane; could ambulate without the cane albeit poorly; and leaned forward when using the cane although he was antalgic with a slow gate. The pelvis was known as completely stable with the pelvic right in excellent position. The claimant's

treating physician express for the claimant morbid obesity would significantly impact the outcome of the pelvic ring fracture as it shifts the center of gravity; the increased lordosis of the spine would compound discomfort; and the claimant did not perform his home exercises as instructed. X-rays indicated that the pelvic ring was stable, healed; the sacro iliac joint was anatomically educed; and there was no progressive loosening of screws.

On April 12, 2012, the claimant presented for follow-up. He reported that he quit smoking for the last few months; and complained of low back pain with numbness and paresthesias in the medial left thigh. The claimant was noted as weighing 288 pounds. Upon examination, the claimant was noted to have three (3) Waddell signs with equivocal straight leg test bilaterally; antalgic gate on the left; could walk heels and toes; and could flex and get his hands to his knees. Additionally, tenderness was noted upon passive range of motion of the left hip; tenderness to palpitation midline LS joint; and no focal weakness. X-rays indicated a transverse process fracture of the lumbar spine, but were otherwise unremarkable. The claimant was noted to have unfortunately reached maximum medical improvement and that his morbid obesity would always cause him to have discomfort unless he had significant weight loss. The claimant was also told that he needed to continue a much more aggressive daily exercise program to have any hope of returning to his previous work…

The claimant presented for continued follow-up on June 13, 2012. He weighed 296 pounds; complained of pain at a level 5 out of 10; and denied any adverse affect or complications of treatment. Upon examination, he was noted to have moderate pain and stiffness with manual stretching of the hips; 5/5 upper extremities; 3-4/5 in his right leg and 4/5 in his left leg with equal reflexes. The claimant had negative straight leg raising; no external edema; diminished lumbar flexion; normal lumbar inspection; and tenderness to palpitation of the cervical, thoracic, and lumbar spines.

On June 18, 2012, R. Rick Harris, M.D., consultatively examined claimant at the request of the State agency. Dr. Harris noted that the claimant walked markedly slow stooped gait, however, the physical examination results indicated reported pain on full range of motion of the neck, shoulders, elbows, wrists and hands. The claimant had a normal grip, normal sensation; and 5/5 motor strength in the bilateral upper and lower extremities. The claimant did have decreased range of motion of the left hip; + straight leg raising bilaterally; diffuse tenderness at mid back; equal reflexes; and could not heal/toe walk or squat and arise…

On July 11, 2012, the claimant continued to complain of pain, but stated that he was ready for his functional capacity evaluation. The claimant complained of pain upon range of motion, but had bilateral lower extremity strength of 4/5 and upper extremity strength 4/5 bilaterally. The diagnostic impression included that the claimant denied any adverse affects of complications from his treatment and that his quality of life improved, pain levels reduced, and daily activity increased due to current medical regimen… An MRI on July 20, 2012, indicated some L4-5 bilateral facet hypertrophy and L5-S1 facet spurring, but no disc protrusion or neural impingement. X-rays indicated normal verbal alignment and no fracture or subluxation…

On July 19, 2012, the claimant underwent a functional capacities evaluation indicated a whole body impairment of 3% based on a recommended lower extremity impairment of 7% resulting from the sacro iliac joint fracture. The claimant was observed standing and/or walking for 20 minutes at a time before having to sit down and poor functional ability with most of the exercises performed. The claimant could occasionally lift and/or carry 35-40 pounds; frequently lift 20 pounds; and push/pull. The claimant could sit for up to an hour; stand for 30-40 minutes; and walk for 30-40 minutes alternately to complete an 8-hour work day. The claimant could frequently climb stairs and ladders, reach overhead, and bend or squat…

On August 3, 2012, the claimant returned to his treating physician with complaints of pain. He underwent a bilateral L3– 4 lumbar facet joint block and bilateral L4–5 lumbar facet joint block…

…

The undersigned notes that the claimant has been formally diagnosed with obesity, and his medical records show a repeated pattern of excessive weight for his height... Therefore, the record supports a diagnosis of obesity. The undersigned has evaluated the claimant obesity and accompanying impairment in accordance with Social Security Ruling 02-1p. This ruling provides that the undersigned must assess the effect that obesity has on the claimant's ability to perform routine movement and necessary physical activity within the work environment. Clearly, the claimant's obesity affects his ability to perform some of the physical requirements of work, as it is likely that his obesity contributes to his complaints of pain and high blood pressure. However, there is no evidence that the claimant's obesity precludes him from performing work at the light and sedentary levels of exertion, consistent with the FCE, as these levels of work activity would minimize the effect of the claimant's obesity on his joints and body systems…

(Id., at 15-18).

The ALJ articulated the weight he accorded to the opinions of the various medical providers, and the reasons for so doing. He explained:

…The functional capacity examination order by the treating physician, Dr. Stewart, is given controlling weight… This FCE assessment is a significantly comprehensive evaluation of the claimants functional capacity and more reflective of his actual functional capacity. The FCE is well supported by acceptable clinical and laboratory examination techniques and are not inconsistent with other evidence in the record.

Greater weight is given to the treatment notes, clinical findings, and diagnostic test contained within the treating medical evidence of record, particularly the records of Dr. Stewart and Dr. Spruill…, orthopedics specialists. The treating physicians examined the claimant on a regular and ongoing basis; were familiar with his overall history and complaints; monitored his condition. The treating physicians work with the claimant, prescribing medications and adjusting those medications as needed based on documented radiographic and laboratory findings. Although the treating physicians offer no express opinions, the medical records and the notations contain therein are consistent with my assessment that the claimant has the residual functional capacity for at least light works as described above.

The undersigned gives very little weight to the residual functional capacity and pain assessment by Dr. Timberlake... He is a family physician and a general practitioner without a specialty in orthopedic surgery. Notably, Dr. Timberlake has examined claimant only twice and then for the non-orthopedic purposes of sinus problems and elevated hypertension. He did not have the benefit and ongoing treating relationship like that of Dr. Stewart and Dr. Spruill. Therefore, very limited weight is given to his assessment and only to the extent that he treated claimant's hypertension.

The undersigned gives very little weight to the opinion of the consultative examiner, Dr. Harris. Although his findings are based upon direct observation and examination of the claimant, his opinions as to functional capacity, are inconsistent with his own clinical findings on examination but more significantly his opinions are not consistent with the treating medical evidence or the abilities demonstrated by the claimant at his functional capacity evaluation just one month later... No weight is given to his conclusion that the claimant cannot work as such opinions are reserved to the Commissioner.

Some weight is given to the assessment of Dr. Callins, the State agency reviewing physician

> [Exhibit 4F]. This assessment was shortly after the claimant's initial injury and while he was under orders to be non-weight bearing. Dr. Collins did not have access to later records or the FCE that showed later improvement.

(Id., at 19).

Additionally, in determining Plaintiff's RFC assessment, the ALJ found as follows:

> **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b). Secondary to the pelvic and spinal trauma with residual pain, the claimant should have a seat/stand option; avoid concentrated exposure to extremes of cold, heath, humidity, and vibration. He can do no working from unprotected heights or with hazardous machinery. He can do occasional stooping, kneeling, crouching, crawling, and occasional climbing the stairs and ramps; but no climbing ladders, ropes, or scaffolds and he can do the occasional bilateral lower extremity pedal operation. Secondary to situational depression, the claimant can understand, remember and carry-out instructions sufficient to perform low semi-skilled tasks; and he can maintain concentration, persistence, and/or pace for periods of up to two hours sufficient to perform an 8-hour workday with routine breaks. He can do low stress work defined as occasional changes in the work setting; no production rate pace work rather goal oriented work; and a well spaced work environment or separate workstation…**

(Id., at 14-15).

The ALJ then determined that Plaintiff is unable to perform his past relevant work and utilizing the testimony of a VE, concluded that based on Plaintiff's age, education, work experience, and RFC, he can perform the representative

occupations of a gate guard, ticket taker, and cafeteria cashier. (Id., at 20-21). Thus, the ALJ concluded that Plaintiff is not disabled. (Id., at 21).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

### B. **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability, and the Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[3]

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. <u>Id.</u> Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). See also <u>Hale v.</u>

20 C.F.R. §§ 404.1512, 404.1520, 416.912, 416.920.

In this case, Plaintiff has raised two issues on appeal: (1) whether the ALJ may assign controlling weight to the FCE conducted by a physical therapist and (2) whether the ALJ properly discounted the opinions of Plaintiff's treating physician and the consultative examiner. (Doc. 13 at 1). These issues are connected, and essentially challenge the evidentiary support for the ALJ's RFC assessment; thus, the Court will address each issue as it relates to whether the ALJ's RFC assessment is supported by substantial evidence.

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, the opinions of examining physicians are given more weight that non-examining physicians and the opinions of treating physicians are given more weight than non-treating physicians. See id. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Indeed, "[t]he ALJ must generally give the opinion of a treating physician 'substantial or considerable weight' absent a showing of good cause not to do so." Newton v. Astrue, 297 Fed. App'x

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

880, 883 (11th Cir. 2008); see also Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)(a treating physician's opinion must be given substantial weight unless good cause is shown to the contrary).

"[G]ood cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). And, an ALJ commits reversible error where he fails to articulate the reason for giving less weight to the opinion of a treating physician. MacGregor v.Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2007) (per curiam) (the ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" is shown to the contrary.). That said, it is the ALJ's duty, as finder of fact, to choose between conflicting evidence, and he may reject the opinion of any physician when the evidence supports a finding to the contrary. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam) (citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion"); Kennedy v. Astrue, 2010 U.S. Dist. LEXIS 39492, *22-23, 2010 WL 1643248 (S.D. Ala.

Apr. 21, 2010) ("[I]t is the ALJ's duty, as finder of fact, to choose between conflicting evidence[,] and he may reject the opinion of any physician when the evidence supports a finding to the contrary."). Based upon a careful review of the record, the undersigned finds that substantial evidence supports the ALJ's decision to assign little weight to the opinions of Dr. Harris and Dr. Timberlake that Plaintiff is totally disabled.

The record reflects that Plaintiff was examined by Dr. Harris on June 18, 2012, at the request of the Agency. (Tr. 341). At that point, Plaintiff was nearly one-year post surgery. Dr. Harris conducted a physical examination and found that Plaintiff walked with a markedly slow stooped gait, that Plaintiff had range of motion in his neck, shoulders, elbows, wrists and fingers, although he reported pain, and that Plaintiff had muscle strength of 5/5 in his upper extremities. In addition, Plaintiff had a decrease in range of motion in his left hip, and a full range of motion in his right hip and in both of his knees and ankles. Plaintiff had positive leg raising bilaterally, had some diffuse tenderness throughout his midback, was unable to toe and heel walk, squat or arise, and had 5/5 muscle strength in his lower extremities. Dr. Harris noted that Plaintiff was post-surgery for his severe pelvic injuries, and that he was currently undergoing physical therapy. Dr. Harris opined that Plaintiff is totally disabled and unable

to work. (Id.). Dr. Harris also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form in which he concluded that Plaintiff could never lift or carry up to 10 pounds, and that he could only sit, stand or walk for five minutes at a time without interruption. (Id., at 334-339).

The undersigned notes that Dr. Harris' findings based on his physical examination of Plaintiff are not consistent with and do not support the extreme physical limitations contained in the Medical Source Statement completed by Dr. Harris, nor his opinion that Plaintiff is disabled. Further, there is nothing in Plaintiff's treatment records that supports the extreme physical limitations listed by Dr. Harris. In fact, Plaintiff's treating physician, Dr. Stewart, who had been treating Plaintiff since June 2011, examined Plaintiff in both February and April 2012, and opined that Plaintiff was capable of returning to sedentary type work. (Tr. 330, 333). Further, the record reflects that an MRI taken on July 20, 2012 indicated some L4-5 bilateral facet hypertrophy and L5-S1 facet spurring, but no disc protrusion or neural impingement and that x-rays indicated normal verbal alignment and no fracture or subluxation. In light of this record evidence, the ALJ had good cause for assigning very little weight to the extreme limitations listed by Dr. Harris, or his opinion that Plaintiff is disabled and

unable to work.

The same holds true with respect to Dr. Timberlake's opinion that Plaintiff is disabled. As noted by the ALJ, the record reflects that Dr. Timberlake treated Plaintiff on two occasions, namely March 19, 2012 and April 6, 2012, and then only for sinus problems and elevated hypertension. (Tr. 19, 342-49). Dr. Timberlake's treatment notes reflect that during each visit, Plaintiff was seen approximately fifteen minutes, and while tenderness near the pelvis and left sacrum was noted during the April visit, no specific functional limitations are noted in the treatment records. (Id., at 347-48). Further, while Dr. Timberlake completed a medical source statement (physical) in July 2012, wherein he opined that Plaintiff can only lift/carry five (5) pounds occasionally, and that Plaintiff can stand/walk one hour in an eight (8) hour day, and can sit one hour in an eight (8) hour day, these severe limitations are not borne out by Dr. Timberlake's treatment notes, or the treatment notes from Plaintiff's treating physicians; thus, the ALJ had good cause for not giving Dr. Timberlake's opinions regarding Plaintiff's functional limitations and his ability to work controlling weight.

As noted *supra*, Plaintiff also contends that the ALJ's reliance on the FCE completed by the physical therapist constitutes reversible error for several reasons. First,

Plaintiff argues that a physical therapist is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513, and that the physical therapist performed the FCE based on the methodology of the Guides to the Evaluation of Permanent Impairment 4th Edition, which was replaced by the American Medical Association in 2003. According to Plaintiff, the outdated edition specifically limits its usage as it relates to determining disability and the updated version of the "Guides" unequivocally states that such methodology should be used for determining "basic activities of daily living, not including work". (Doc. 14 at 6-7). Plus, the outdated version does not include the updated methodology for assessments of the individual's pain or medication side effects, which the ALJ is required to consider and evaluate in disability determinations. Plaintiff further contends that the physical therapist's FCE provides only a "snapshot" of what Plaintiff can do, not what he is capable of doing "on an ongoing basis for eight hours a day five days a week", and the ALJ ignored Plaintiff's testimony that he was unable to get out of bed for two days following the FCE. (Id.). Thus, Plaintiff maintains that the ALJ's assignment of controlling weight to the FCE conducted by the physical therapist constitutes reversible error.

The law is clear that "[a] physical therapist is not a treating physician, and his or her opinion is not entitled to

automatic and great deference, under the Social Security regulations." Aponte v. Commissioner Of Social Sec., 2009 U.S. Dist. LEXIS 3497, *9, 2009 WL 129629 (M.D. Fla. Jan. 20, 2009) (citing 20 C.F.R. § 404.1513; Freeman v. Barnhart, 220 Fed. App'x 957 (11th Cir. 2007)). However, such an opinion is entitled to consideration as an "other source." Id. Opinions from "other non-medical sources" such as physical therapists, "who are not technically deemed 'acceptable medical sources'...are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p.

In this case, the ALJ gave controlling weight to the FCE assessment that was ordered by Dr. Stewart and was prepared by a physical therapist. In assigning controlling weight to the FCE assessment, the ALJ found that it is a significantly comprehensive evaluation, and is well supported by acceptable clinical and laboratory examination techniques and are not inconsistent with other evidence in the record. The FCE assessment reflects that Plaintiff was evaluated in the areas of lifting, carrying, pushing, standing, walking, stair climbing, bending, repetitive squatting, overhead reaching, trunk rotation, grasping, pushing/pulling, etc. (Tr. 424). The physical therapist concluded as follows:

> Throughout the evaluation the patient did display objective limitations with his ability to perform material and non-material handling activities with noted impairments with ambulation, strength and endurance. The evaluee was observed standing/walking for 20 minutes at a time before having to sit down. The evaluee with the non-material handling displayed poor functional ability with most of the exercises performed. A Roofer per the Dictionary of Occupational Titles (DOT) is rated with a physical demand level of Medium. With material handling, he demonstrated the ability to work in the Medium DOT category, but displayed increased signs of pain and decreased endurance. He completed all of the material handling activities to the point of objective physical weakness or fatigue.

(Tr. 431).

Along with the FCE assessment, the physical therapist completed a written statement addressed to Dr. Stewart, wherein the therapist opined that based on her evaluation, Plaintiff's lower extremity impairment was 7% and his whole person impairment was 3%. Interestingly, Dr. Stewart signed the statement, and expressly noted that she agreed with the "3% whole person" impairment; however, she did not comment on the lower extremity impairment of 7%. (Id., at 422). Further, although there is a space for her signature on the FCE assessment Dr. Stewart did not sign the FCE assessment. As a result, there is nothing before the Court that reflects that Dr. Stewart, Plaintiff's primary treating doctor, agreed with the functional limitations listed in the FCE assessment, let alone the therapist's opinion that Plaintiff could return to medium

work.

Dr. Stewart's treatment records do however reflect that on at least two occasions, she expressed the opinion that Plaintiff was capable of performing sedentary work if his employer could accommodate him. (Id., at 330, 333). Indeed, the record reflects that on April 20, 2012, Dr. Stewart opined that Plaintiff had reached MMI, and that he likely would continue to have vague lower lumbar and sacral discomfort because of the combination of a sacral fracture and his morbid obesity. (Id., at 330). She also expressly stated that she would approve of Plaintiff receiving retraining for a more sedentary type of work. (Id.). Further, as noted *supra*, when Dr. Harris conducted the consultative examination of Plaintiff on June 18, 2012, he observed that Plaintiff walked with a "markedly slow stooped gait", and that he has positive leg raisings, diffuse tenderness throughout the mid back, decrease in range of motion of the left hip, and an inability to toe and heal walk or squat and arise. (Id., at 341).

The undersigned finds that in light of Plaintiff's documented injuries, and the medical evidence, including Dr. Stewart's treatment notes reflecting that she would approve sedentary type work for Plaintiff, the ALJ's decision to give controlling weight to the FCE prepared by the physical therapist was error. Further, the ALJ's finding that Plaintiff can

perform light work is also at odds with the medical evidence, including Dr. Stewart's treatment records wherein she opines that Plaintiff has reached MMI and is capable of performing sedentary type work. (Id., at 330). In his opinion, the ALJ does not discuss nor seek to resolve this critical discrepancy in the record; thus, this case is due to be reversed.

V.  **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits income be **REVERSED and REMANDED**.

**DONE** this **25th** day of **August, 2014.**

　　　　　　　　　　　　　　　　　 **/s/ SONJA F. BIVINS**
　　　　　　　　　　　　　　 **UNITED STATES MAGISTRATE JUDGE**